**PORTLAND AUDUBON SOCIETY, Headwaters, Lane County Audubon Society, Oregon Natural Resources Council, the Wilderness Society, Sierra Club, Inc., Siskiyou Audubon Society, Central Oregon Audubon Society, Kalmiopsis Audubon Society, Umpqua Valley Audubon Society, Natural Resources Defense Council, Plaintiffs,**

**v.**

**Manuel LUJAN, Jr., in his official capacity as Secretary, United States Department of Interior, Defendant,**

**and**

**Northwest Forest Resource Council, Huffman & Wright Logging Co., Freres Lumber Co., Inc., Lone Rock Timber Co., Inc., Scott Timber Co., Clear Lumber Manufacturing Corp., Yoncalla Timber Products, Inc., Cornett Lumber Company, Inc., Association of O & C Counties and Benton County, Douglas County Forest Products Company, Medford Corporation, Rogge Forest Products, Inc., Defendants–Intervenors.**

**Civ. No. 87–1160–FR.**

United States District Court, D. Oregon.

July 18, 1991.

Victor M. Sher, Todd D. True, Corrie Yackulic, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiffs Portland Audubon Soc., Headwaters, The Wilderness Soc., Sierra Club, Inc., Siskiyou Audubon Soc., Cent. Oregon Audubon Soc., Kalmiopsis Audubon Soc., Salem Audubon Soc., Umpqua Valley Audubon Soc. and Natural Resources Defense Council.

Michael D. Axline, John E. Bonine, David Atkin, Western Natural Resources Law Clinic, University of Oregon School of Law, Eugene, Or., for plaintiffs Lane County Audubon Soc. and Oregon Natural Resources Council.

Charles H. Turner, U.S. Atty., Thomas C. Lee, Asst. U.S. Atty., Portland, Or., Roger W. Nesbit, Special Asst. U.S. Atty., Portland, Or., for defendant.

Mark C. Rutzick, Cynthia L. Hull, Preston Thorgrimson Shidler Gates & Ellis, Portland, Or., for defendants-intervenors Northwest Forest Resource Council, Huffman & Wright Logging Co., et al., and Douglas County Forest Products, et al.

Phillip D. Chadsey, Kevin Q. Davis, Stoel Rives Boley Jones & Grey, Portland, Or., for defendant-intervenor Ass'n of O & C Counties and Benton County.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of plaintiffs for leave to file an amended complaint (# 639).

## BACKGROUND

On May 8, 1991, this court ruled that there was no longer a claim in this case under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-47, 1991 WL 81838 (1972). The court stated as follows:

> In *Portland Audubon Soc'y v. Lujan*, 884 F.2d 1233, 1242 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1470 [108 L.Ed.2d 608] (1990), the Court of Appeals affirmed this court's dismissal of the NEPA claim. The Court of Appeals reversed and remanded for further proceedings only the non-NEPA claims. There is no NEPA claim now before this court because the dismissal of the NEPA

claim by the Court of Appeals is the law of this case.

Opinion at 9-10.

Plaintiffs, the Portland Audubon Society and other environmental groups, now move for leave to file a first amended complaint in order to reallege their first claim for relief under the NEPA.[1]

In their first amended complaint, plaintiffs seek to reallege the NEPA claim which the court previously dismissed based upon Continuing Resolution H.J.Res. Section 314, Pub.L. 100-202. 101 Stat. 1329-254, 133 Cong.Rec. H12468 (reenacted without change as H.R. 4867, Pub.L. 100-446, 102 Stat. 1774, 1825) (hereinafter referred to as Section 314). *Portland Audubon Soc'y v. Lujan*, 712 F.Supp. 1456 (D.Or. 1989), *affirmed in part, reversed in part, Portland Audubon Soc'y v. Lujan*, 884 F.2d 1233, 1242 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). Plaintiffs contend that since this statutory provision is no longer in effect, the court should consider once again their NEPA claim.

Defendant, Manuel Lujan, Jr., in his capacity as the Secretary of the United States Department of Interior, and the intervenors oppose the motion of plaintiffs to reallege their NEPA claim. Defendant and intervenors point out that Section 314, as reenacted in 1989 as Section 312, is still in effect and that the proposed amendment to the first claim for relief would be futile.

## HISTORY OF SECTION 312

On October 19, 1987, plaintiffs filed this action seeking declaratory and injunctive relief. In their first claim for relief under the NEPA, plaintiffs alleged that the Oregon State Director of the Bureau of Land Management (BLM) violated the NEPA when he concluded that the BLM did not need to prepare supplemental environmental impact statements based upon newly available information regarding the north-

---

**1.** In the first amended complaint tendered to the court, plaintiffs reallege the second and fourth claims for relief, which have also been dismissed in this action. Plaintiffs explain that they do not seek to relitigate the second and fourth claims for relief, but seek to include these claims in the tendered first amended complaint in order to preserve them for appeal. Consequently, this court need only address the request to amend the first claim for relief under NEPA.

ern spotted owl which had been developed since the preparation of the environmental impact statements.

On December 21, 1987, Congress enacted Section 314, which provides:

The Forest Service and Bureau of Land Management are to continue to complete as expeditiously as possible development of their respective Forest Land and Resource Management Plans to meet all applicable statutory requirements. Notwithstanding the date in section 6(c) of the NFMA (16 U.S.C. 1600), the Forest Service, and the Bureau of Land Management under separate authority, may continue the management of lands within their jurisdiction under existing land and resource management plans pending the completion of new plans. Nothing shall limit judicial review of particular activities on these lands: *Provided, however,* That there shall be no challenges to any existing plan on the sole basis that the plan in its entirety is outdated, or in the case of the Bureau of Land Management, solely on the basis that the plan does not incorporate information available subsequent to the completion of the existing plan: *Provided further,* That any and all particular activities to be carried out under existing plans may nevertheless be challenged.

On April 20, 1988, this court entered judgment in favor of defendants after granting their motion to dismiss on the grounds that Section 314 withdrew the jurisdiction of this court to consider the claims of plaintiffs in this action. The court found that the claims of plaintiffs which were based upon the allegation that new information had become available since the completion of the existing timber management plans contained the precise challenge that Congress intended to limit in Section 314. Opinion at 16.

On September 27, 1988, Section 314 was reenacted without change but with substantially more legislative history. This reenactment was contained in the Department of Interior and Related Agencies Appropriations Act, 1989, Pub.L. 100–446, 102 Stat. 1774, 1825–1826.

On January 24, 1989, the Ninth Circuit Court of Appeals reversed and remanded the action to this court finding that Section 314 was "anything but clear" and directing the district court to consider with regard to the NEPA claim whether this action was a challenge to the plans barred by Section 314 or a challenge to "particular activities" to be carried out under the plans and therefore not barred by Section 314. *Portland Audubon Soc'y v. Hodel,* 866 F.2d 302 (9th Cir.1989).

On May 15, 1989, this court ruled that the decision of the BLM not to prepare a supplemental environmental impact statement in 1987 was a challenge to the plans barred by Section 314 and not a challenge to "particular activities to be carried out under existing plans," and further that the NEPA claim was based upon "new information," and therefore Section 314 barred judicial review of the NEPA claim in these proceedings. *Portland Audubon Soc'y v. Lujan,* 712 F.Supp. 1456 (D.Or.1989).

On September 6, 1989, the Ninth Circuit Court of Appeals again reviewed this court's dismissal of the NEPA claim and found that in this case "if plaintiffs were to succeed on the merits of their NEPA claim, BLM would be required to suspend its management plans and prepare a supplemental EIS, addressing concerns about the northern spotted owl." *Portland Audubon Soc'y v. Lujan,* 884 F.2d at 1239. The Court of Appeals affirmed the holding of this court that Section 314 precludes "this kind of claim." *Id.* at 1240. The court explained:

[T]he presumption in favor of [judicial] review is overcome ... where there is 'persuasive reason to believe' that Congress intended to preclude judicial review.... Here, there exists not only persuasive evidence of congressional intent, but an explicit statutory command precluding review.

Plaintiffs have had ample opportunity to put forward an alternative interpretation of section 314 which would give meaning to the prohibition on challenges to the BLM plans. They present arguments, addressed above, explaining that

the NEPA claim does not challenge the plans. They do not, however, provide any satisfactory explanation of what exactly would be a challenge to the plans under their interpretation of section 314. They present us no alternative interpretation that would allow us to give meaning to Congress' enactment, as is our duty, and yet would allow their NEPA claim to survive section 314. The district court correctly held that section 314 bars the NEPA claim.

*Id.* (citations omitted).

On October 23, 1989, Congress reenacted Section 314 in an identical provision in Section 312 of the Department of Interior and Related Agencies Appropriations Act, 1990, Pub.L. 101–121, 103 Stat. 701, 743 (Section 312). Section 312 contains no expiration date, and there is no expiration date in the Act as a whole.

## CONTENTIONS OF THE PARTIES

Plaintiffs contend that Section 312 was a temporary measure which was enacted three separate times in as many years and expired in September, 1990; that neither Section 314 nor the subsequently enacted and identical Section 312 bars their NEPA claim; and that this court should allow the complaint to be amended and should grant injunctive relief to plaintiffs by ordering the BLM to cease timber sales in the habitat of the northern spotted owl pending the preparation of a new environmental impact statement.

Defendant and intervenors point out that Section 312, the last enactment of Section 314, does not contain an expiration date and that there is no legal basis for the assertion of plaintiffs that Section 312 has expired. Defendant and intervenors explain that Section 312 is a general provision of law enacted in an appropriations act, and that as such it remains the law until Congress explicitly repeals it or provides differently. Defendant contends that Congress has stated that the purpose of Section 312 is to insulate current timber management plans from certain challenges until the BLM completes new timber management plans. Since Congress knew

that the new timber management plans would not be completed in fiscal year 1990, it would not have enacted one year of protection for a multi-year planning process.

Plaintiffs reply that Congress did not intend that Section 312 be permanent because it would not have enacted the same provision three years in a row if it had anticipated that the provision was permanent; that Congress clearly intended each reenactment of Section 314 as a one-year, short-term "fix" to a perceived problem; and that since Congress declined to reenact Section 312, the last enactment of Section 314, at the end of fiscal year 1990, the bar to their NEPA claim has been lifted.

## APPLICABLE LAW

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." Leave to amend should be denied, however, if "any further amendment to the complaint would likely prove futile." *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir.1990). In this case, whether Section 312 continues to bar the NEPA claim of plaintiffs is a legal question which is appropriately addressed in determining whether the NEPA claim of plaintiffs would have any merit.

■ There is no rule that provides that provisions of law within the four corners of an appropriations bill become null and void at the end of the fiscal year in question. Repeals of law by implication are not favored. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978). In order to determine whether a particular provision within an appropriations bill has continued application, the court must determine as best it can the intent of Congress.

## ANALYSIS AND RULING

■ The issue this court must decide is whether Congress intended Section 312 to apply through the next planning cycle of the BLM or to apply only to fiscal year 1989.

The court will begin its analysis with the plain words of Section 312. Section 312, as

 

Section 314 preceeding it, states that "[n]otwithstanding the date in section 6(c) of the NFMA (16 U.S.C. 1600), the ... Bureau of Land Management ... may continue the management of lands within [its] jurisdiction under existing land and resource management plans pending the completion of new plans." Congress has clearly expressed its intent in Section 312 that judicial review of challenges to existing plans, such as the challenges plaintiffs are advancing in their NEPA claim, be limited pending the completion of the new plans.

Since Section 312 contains no date of expiration, and since the 1990 Appropriations Act in which it is contained contains no date of expiration, the court finds that the language of Section 312 applies to the completion of a process rather than the expiration of a period of time. The court concludes from the language of Section 312 that Congress intended the limitation placed upon judicial review of certain challenges to existing plans to be in effect until the "completion of new plans." Section 312.

The legislative history cited by plaintiffs does not require a contrary conclusion. Congress stated that Section 312 was intended to be a "short term response." *See, e.g.,* Conf.Rep. No. 100–862, 100th Cong.2d Sess. re: H.R. 4867 (Dept. of Interior and Related Agencies Appropriations Bill for FY 1989) (Aug. 10, 1988) at 76. "Short term response" can reasonably be interpreted to mean "until the completion of new plans." Section 312. The completion of the new plans is a long-standing process of which Congress was aware and in which Congress was involved.

The fact that the language of Section 312 was included in the same form in the relevant appropriations bills for fiscal years 1987, 1988 and 1989 is arguably inconsistent with the court's conclusion that Congress intended the limitation placed upon judicial review of certain challenges to existing plans to be in effect until the completion of the new plans. However, faced with choosing between the language expressed in Section 312 for three years in a row and the arguably inconsistent action of

Congress in reenacting the same language three years in a row, the court chooses to base its decision on the language expressed in Section 312. The court finds that Section 312 continues to bar the NEPA claim of plaintiffs.

### CONCLUSION

Plaintiffs' motion for leave to file an amended complaint (# 639) is denied.